The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCHUYLER PYATTE BARBEAU,<br><br>Defendant. | NO. CR15-391RAJ<br><br>**GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, Todd Greenberg, Assistant United States Attorney for said District, and Jessica Manca, Special Assistant United States Attorney for said District, respectfully submits this trial brief.

## INTRODUCTION

Defendant Schuyler Pyatte Barbeau is charged by way of a Superseding Indictment with the offenses of Possession of an Unregistered Firearm (a short-barreled rifle and machinegun), in violation of Title 26, United States Code, Section 5861(d) and 5845(a)(3) and (6); and Possession of a Machinegun, in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2). The trial is scheduled to begin on June 5, 2017.

Government's Trial Brief - 1
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# FACTUAL BACKGROUND

In June 2015, FBI agents spoke with a Confidential Human Source ("CHS"). The CHS reported numerous concerns related to Schuyler Barbeau's violent and anti-government activities and rhetoric.

On October 17, 2015, Barbeau met with the CHS at Barbeau's residence in Springdale, Washington. Barbeau told the CHS that he was considering selling a short-barreled rifle ("SBR") Barbeau owned, and asked the CHS to find a buyer for the SBR. Barbeau said he wanted to sell the SBR for $5,000. According to the CHS, Barbeau had previously spoken to him about manufacturing a "drop-in auto sear" for this SBR, allowing the SBR to operate as a machinegun.[1]

On October 23, 2015, FBI agents conducted an open source search of Facebook looking for postings related to Barbeau and an SBR, in an effort to corroborate the information provided by the CHS. The agents found multiple such postings, including:

- On July 30, 2014, Facebook user "Blaine Cooper" posted a photograph of Barbeau holding an SBR standing in front of the rear tailgate of a sport utility vehicle. The text accompanying the photograph read, "With Schuyler Barbeau," and provided a direct link to Barbeau's Facebook account.
- On August 10, 2014, Barbeau posted on his personal Facebook account a photograph of a tan-colored handgun and an SBR on top of a yellow flag, included as a part of a news article. The text accompanying the photograph said: "I love how a bunch of my pictures are poppin up in articles around the web." On August 11, 2014, Facebook user "Ryan Gargano" commented on the photograph and inquired, "You own an SBR? Niiice. What barrel length

---

[1] A drop-in auto sear (DIAS) is, by definition, a combination of parts designed and intended exclusively for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Consequently, an auto sear itself is generally considered a machine gun under federal law, and the use of an auto-sear with a firearm generally transforms the firearm into a machine gun as defined by federal law.

Government's Trial Brief - 2
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

before that muzzle break?" On August 12, 2014, Barbeau responded: "Ryan Gargano it's a 10.5 Rainier Arms Ultramatch series. it shoots really nice."

On November 8, 2015, the CHS met with Barbeau. FBI Special Agents observed this meeting and the CHS recorded the meeting at the direction of the FBI. During the meeting, the CHS told Barbeau that he had a buyer interested in purchasing the SBR for $5,000. Barbeau told the CHS that he would consider the offer. Barbeau also made comments referring to the fact that the SBR functioned as a machinegun. Specifically, Barbeau stated words to the effect: "Remember what I have on my rifle. It ain't no just . . . phew, phew, phew, phew." The CHS asked Barbeau: "Did you get that thing [the auto sear] to work?" Barbeau replied: "It works, but not good. But it works. And If I can ever find somebody with a 3D printer…"

On November 20, 2015, Barbeau contacted the CHS and said he was ready to sell the SBR "ASAP." The CHS told Barbeau that the potential buyer was out of town for the upcoming Thanksgiving holiday. Barbeau suggested he would deliver the SBR to the CHS in advance of the transaction, so that the buyer could inspect the SBR before paying for it. Barbeau agreed to meet the CHS on the afternoon of November 22nd to deliver the SBR. During this same conversation, Barbeau told the CHS about new rifles he was interested in buying. The CHS asked Barbeau if his auto-sear would work with these new firearms. Barbeau confirmed that it would.

In the early morning of November 22, 2015, Barbeau unexpectedly arrived at the CHS' residence and dropped-off the SBR (as noted above, they had been planning to meet later that day in the afternoon). Barbeau instructed the CHS to obtain the money from the buyer as soon as possible. Shortly thereafter, Barbeau departed the residence, and the CHS contacted the FBI. FBI agents then met with the CHS and took possession of the SBR. The SBR contained the above-referenced auto sear device.

On December 6, 2015, the CHS, at the direction of the FBI, arranged a meeting with Barbeau ostensibly to give him the cash from the sale of the SBR. Barbeau was arrested at the designated meeting location. After being advised of and waiving his

Government's Trial Brief - 3
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Miranda* rights, Barbeau made a post-arrest statement and admitted to possessing the SBR, to knowing the barrel was less than 16 inches in length, and to knowing it operated as a machinegun by firing bursts of multiple rounds with one pull of the trigger. This post-arrest interview was audio recorded.

Also on December 6, 2015, FBI agents searched the trailer in which Barbeau resided in Springdale. The agents recovered numerous rounds of ammunition and seven loaded magazines that were compatible with the SBR, documents in Barbeau's name, and a smartphone belonging to Barbeau. This smartphone and another one seized from Barbeau's possession at the time of his arrest were forensically searched pursuant to federal search warrants. Both phones contained multiple photos of the SBR.

ATF agents subsequently inspected the SBR and certified that the barrel was less than 16 inches in length, and that it operated as a fully automatic machinegun, therefore requiring registration under the National Firearms Registration and Transfer Record. In addition, the ATF has verified that Barbeau had not registered the firearm in the National Firearms Registration and Transfer Record.

## **APPLICABLE LEGAL FRAMEWORK**

### A.   Count 1: Possession of an Unregistered Firearm

Count One charges the defendant with the offense of Possession of an Unregistered Firearm, specifically, possession of a gun that constituted both a short-barreled rifle and a machinegun, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(3) and (6).

In order for a defendant to be convicted of that charge, the government must prove each of the following elements beyond a reasonable doubt: (1) that the defendant knowingly possessed a firearm that was either a short-barreled rifle and/or a machinegun; (2) that the defendant was aware that the firearm had the features to make it a short-barreled rifle and/or a machinegun; and (3) that the defendant had not registered the firearm with the National Firearms Registration and Transfer Record. Ninth Circuit Model Instruction 9.34 (2010).

Government's Trial Brief - 4
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is well-settled that the United States does not have to prove that the defendant knew it was illegal to possess a short-barreled rifle or a machinegun. *United States v. Summers*, 268 F.3d 683, 688 (9th Cir. 2001); Ninth Circuit Model Instruction 9.34 (2010). Similarly, the government does not have to prove that the defendant knew the firearm was required to be registered, *Summers*, 268 F.3d at 688, or that the defendant knew the precise length of the rifle barrel. *United States v. Sanders*, 520 F.3d 699, 701–02 (7th Cir. 2008).

In this case, none of the three elements are seriously in dispute. As for the first element, Barbeau admitted to possessing the firearm both in his post-arrest statement and in pleadings filed before this Court. In addition, Barbeau's smartphones contained multiple pictures of the firearm; there are multiple Facebook posts in which he is depicted with and/or discussing the firearm; and the CHS will testify that Barbeau possessed the firearm. As for the second element, Barbeau admitted during his post-arrest statement that he knew the barrel of his firearm was only 10.5 inches in length and that the gun acted as a machinegun because it fired more than one round at a time. Barbeau made similar statements on various Facebook postings and during his conversations with the CHS. Finally, ATF expert witnesses will testify that the firearm was both a short-barreled rifle and a machinegun as defined under federal law, and that Barbeau did not register the firearm (a fact also admitted to by Barbeau during his post-arrest interview).

**B.    Count 2: Possession of a Machinegun**

The defendant also is charged with the offense of Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o). This crime consists of two elements: First, that the defendant knowingly possessed a machinegun, and second, that the defendant knew that the firearm was a machinegun or was aware of the firearm's essential characteristics that made it a machinegun. *See generally United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir. 1997); *United States v. McGiffen*, 267 F.3d 581, 590 (7th Cir. 2001). As set forth above, there is abundant evidence that the defendant both possessed the gun and knew it operated as a machinegun.

Government's Trial Brief - 5
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C.     Forfeiture Proceedings

Both Counts 1 and 2 authorize the forfeiture of any firearms involved in the offense. *See* 26 U.S.C. § 5872(b); 18 U.S.C. § 924(d)(1). In this case, the government will seek the forfeiture of the SBR/machinegun that was seized from Barbeau.

Under Federal Rule of Criminal Procedure 32.2, the Court should conduct a forfeiture proceeding after the jury returns its verdict. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (B). The Court should conduct this proceeding itself unless either party affirmatively elects for the jury to decide the issue. *See* Fed. R. Crim. P. 32.2(b)(5). In this case, the government does not elect a jury trial, and the Court should inquire of Barbeau whether he wishes for the jury or the Court to decide the issue.

Regardless of who decides the issue, the sole question for consideration during the forfeiture phase is whether there is a sufficient nexus between the firearm and the offenses of conviction. *See* Fed. R. Crim. P. 32.2.(b)(1)(A). The standard of proof is a preponderance of the evidence, rather than beyond a reasonable doubt. *See* Advisory Comm. Note to Rule 32.2 (2000); *see also generally United States v. Haleamau*, 887 F. Supp. 2d 1051, 1055 (D. Haw. 2012).

During the forfeiture proceeding, the government does not expect to call any additional witnesses or present any additional testimony. Rather, we intend to rely upon the evidence that was offered during the guilt phase of the case. The government's proposed jury instructions include proposed instructions to be given during the forfeiture phase of the case.

## EVIDENTIARY ISSUES

### A.     The Recordings

The government will offer recorded conversations between Barbeau and the CHS. Barbeau's statements are not hearsay because they are statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). The CHS's statements are not hearsay because the statements are not being offered for their truth, but rather to put the defendant's statements into context, *i.e.*, to understand the conversation. *See United States v.*

Government's Trial Brief - 6
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Whitman,* 771 F.2d 1348, 1352 (9th Cir. 1985) ("statements [by other person in conversation] were not admitted for their truth but to enable the jury to understand [the defendant's] taped statements, and the jury was so instructed. [The other person in the conversation] later testified, and [the defendant] had an opportunity to cross-examine him."). The CHS will authenticate the recordings by testifying that they are true and accurate recordings of his conversations with Barbeau.

The recordings include a number of inflammatory statements made by Barbeau, including references to targeting law enforcement officers and judges for acts of violence. The government will offer redacted versions of the recordings to avoid this content.

### B.   Barbeau's Post-Arrest Statement

The government will offer certain portions of Barbeau's post-arrest statement in which he admits (1) possessing the firearm in question; (2) that he knew that the firearm's barrel was less than 16 inches in length; (3) that he knew the firearm acted as a machinegun; and (4) that he did not register the firearm. The statement was audio recorded. Barbeau made the statement after being advised of his *Miranda* warnings, and there has been no suggestion that the statement was somehow involuntary.

Such statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). However, the converse is not true; a defendant is not entitled to admit any of his own out-of-court statements. An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-serving statements because such statements "are exactly the ones which people are most likely to make even when they are false").

### C.   Barbeau's Facebook Posts and Messages

The government will offer at least one Facebook post and numerous Facebook instant messages recovered from Barbeau's Facebook account over which he discussed

Government's Trial Brief - 7
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the firearm at issue in this case.  These sorts of communications are admissible statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A).  The government will authenticate the communications by eliciting testimony from a law enforcement witness that the records were produced by Facebook in response to a federal search warrant, and that the posts/messages came from a Facebook account that (1) bore Barbeau's name; (2) included his picture in the profile; (3) contained other information associated with Barbeau in the account's profile; and (4) included numerous posts associated with Barbeau.  *Cf. generally United States v. Tann*, 425 F. Supp. 2d 26, 38 (2006) (email admissible because circumstances, including name on account, indicated that account belonged to defendant); *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000) (affirming admission of defendant's email into evidence where email contained an email address known to be used by defendant, contained defendant's signature, and the content of the emails demonstrated knowledge by the sender of both defendant's criminal activity and personal relationships).

### D. Firearm Evidence

The government will introduce the seized firearm and related firearms accessories.  The government will carefully coordinate with the U.S. Marshall's Service and the Court to ensure that all necessary safety precautions are taken with this evidence.

### E. Firearms Examiner

The government intends to call ATF Firearms Enforcement Officer George Rogers, who will present scientific or specialized testimony regarding his technical examination of the firearm.  This testimony is admissible pursuant to Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto."  The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly

Government's Trial Brief - 8
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988). To the extent that an expert's testimony is based upon information obtained other than through personal observation, it is permissible if it is based upon information of the type reasonably relied upon by experts in forming expert opinions. *See United States v. Golden*, 532 F.2d 1244 (9th Cir. 1976) (holding it proper to admit DEA agent's testimony about market value of methamphetamine where that testimony was based in part upon information obtained from other undercover agents, because such information is of the type reasonably relied upon by experts determining prevailing prices in clandestine markets).

Officer Rogers has served as a firearms instructor for twenty-five years, and has attended numerous trainings regarding firearms and firearms recognition. In his role at ATF, he has examined hundreds of firearms and rounds of ammunition for the purpose of determining the manufacturer, model, caliber/gauge, and serial number; the place of manufacturer; function and design, and/or status, as related to the amended Gun Control Act of 1968 and the National Firearms Act. He is well qualified to provide relevant testimony in this case regarding the functionality of the firearm, as well as the length of the rifle barrel.

### F. National Firearms Registration and Transfer Record

The government will offer two certified records signed by Robert Howard, a firearms specialist, which state that he has custody and control of the National Firearms Registration and Transfer Record and that, after a diligent search, he found no evidence that Barbeau's firearm had been registered to him. The reports include a public seal from ATF.

Howard's report is a self-authenticating domestic public document admissible under Federal Rule of Evidence 902(2).[2] The content of Howard's report is not hearsay

---

[2] Rule 902(2) provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

Government's Trial Brief - 9
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because it confirms the absence of a record. *See* Fed. R. Evid. 803(10) (confirming that testimony about the absence of a public record is not hearsay); *see also United States v. Combs*, 762 F.2d 1343, 1347-48 (9th Cir. 1985) (upholding the admissibility of a certified report regarding the absence of registration in National Firearms Registration and Transfer Record). Furthermore, testimony of the absence of a record does not implicate Federal Rule of Evidence 1002 (the "best evidence rule"). *United States v. Diaz-Lopez*, 625 F.3d 1198, 1200-1202 (9th Cir. 2010). In addition, Howard will testify at trial and thus will be available for any cross-examination regarding the contents of his report and his search generally.

### G. Admissibility of Pleadings Filed by Barbeau.

The government intends to introduce into evidence limited excerpts of at least one pleading filed by Barbeau in this case; specifically, the Motion to Dismiss (Dkt. 84) filed on May 5, 2017. The government will seek to admit certain factual statements made by Barbeau in this pleading in which he admits to manufacturing and possessing the firearm at issue; to manufacturing and possessing the auto sear; that the firearm is a short-barreled rifle; and that the firearm functions as a machinegun. These statements are obviously relevant and they are admissible as statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

### H. Hearsay Issue: Out of Court Statements Not Offered to Prove Truth.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The admission of hearsay into evidence is generally proscribed by Rule

---

(1) *Domestic public documents under seal.* A document bearing a seal purporting to be that of the United States . . . or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution.
(2) *Domestic public documents not under seal.* A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

Government's Trial Brief - 10
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

802.  However, when it is relevant that an out-of-court statement was made, and the statement is offered exclusively to prove that it was made, it is not hearsay and is therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982).  That is because statements not offered for their truth are not hearsay.  Rule 801(c).

The government anticipates eliciting some out-of-court statements not to prove the truth of the matters asserted, but to prove that the statements were made in order to explain the subsequent actions of the law enforcement officers who heard the statements. This will primarily involve statements made to FBI agents by the CHS, to explain the agents' subsequent investigative actions.

These statements will not be offered to prove the truth of the matters asserted – and the government is agreeable to an appropriate limiting instruction – but rather to provide the context for the motive and reason for the investigators' subsequent actions. Therefore, the statements would not constitute "hearsay" within the definition of Fed. R. Evid. 801.  *See, e.g. United States v. Mayes*, 370 F.3d 703 (7th Cir. 2004) (out-of-court statements by informants that they could purchase cocaine at a particular address were not hearsay, because they were admitted to explain why police officers took steps to make controlled buys and to execute search warrant at that address); *United States v. Rosario-Fuentez*, 231 F.3d 700, 708 (10th Cir 2000) ("During [officer's] testimony, the government offered the statement by [witness] not to show that [defendant] was actually [the witness's] drug supplier, but rather to demonstrate [the officer's] reason for investigating her."); *United States v. Hawkins*, 905 F.2d 1489, 1495-96 (11th Cir. 1990) (statement by witness made to government agent admissible to explain why the investigation was launched, and to rebut defense claims that there was no legitimate basis for investigation); *United States v. Valencia*, 957 F.2d 1189, 1198 (5th Cir. 1992) (statement by witness to DEA agent not hearsay because it was offered not for the truth but to explain why the agent decided to arrest the defendant after a period of delay); *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) (statement is not hearsay "when offered for the limited purpose of explaining why a government investigation was

Government's Trial Brief - 11
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

undertaken"); *United States v. Love*, 767 F.2d 1052 (4th Cir. 1985) (agent's testimony regarding information he received from third party was not hearsay, since it was offered to explain the preparations agents took in anticipation of the accused's arrest); *United States v. Brown*, 923 F.2d 1009, 111 (8th Cir. 1991) (statement by anonymous informant not hearsay because it was offered for the purpose of explaining why the police investigation was undertaken); *United States v. Stout*, 599 F.2d 866 (8th Cir. 1979) (police officer's description of a vehicle, as transmitted to him by third party, was admissible to prove why the officer stopped the car, and was not objectionable hearsay).

### I. Exclusion of Witnesses.

Pursuant to Rule 615 of the Federal Rules of Evidence, the government respectfully requests that witnesses be excluded from the courtroom, with the exception of Special Agent Daniel Bennett, who is the lead case agent. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

DATED: May 25, 2017.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Todd Greenberg*
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

*s/ Jessica Manca*
JESSICA MANCA
Special Assistant United States Attorney

Government's Trial Brief - 12
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties. I hereby certify that I have served the defendant who is non CM/ECF participant via certified mail.

Schuyler barbeau, *pro se*
Federal Detention Center - SeaTac
Reg:  46153-086
P.O. Box 13900
Seattle, WA  98198-1090

*s/ Salee Porter*
SALEE PORTER
Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:  (206) 553-4345
E-mail:  Salee.Porter@usdoj.gov

Government's Trial Brief - 13
*United States v. Barbeau*, CR15-391RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970